## HAYES v. STORTZ.

1. SALE—BREACH OF CONTRACT—REMEDIES—ELECTION—DAMAGES.
   The vendee in a contract foi the sale of an interest in a boat, on refusal by the vendor to convey after full payment of the purchase price, has a choice of two remedies; he may either treat the contract as in force, and sue for the value of the property converted, or he may rescind the contract, and recover his payments with interest, whether made directly to the vendor, or to a third person at the vendor's direction; but, having chosen the latter remedy, he cannot also recover for profits earned by the boat since the date of the contract, which have been received by the vendor.

2. SAME—EVIDENCE.
   In such suit, however, it is competent to show the amount of such profits, in order to establish that, together with the payments made, they equaled the full sum plaintiff agreed to pay.

Error to St. Clair; Whipple, J. Submitted April 25, 1902. (Docket No. 63.) Decided June 3, 1902.

*Assumpsit* by John Hayes against George Stortz for money had and received. From a judgment for plaintiff, defendant brings error. Reversed.

*James A. Muir*, for appellant.

*H. A. Babcock* (*George G. Moore*, of counsel), for appellee.

MONTGOMERY, J. In January, 1894, Lonsby & Wolf were owners of a one-eighth interest in the steam barge Thomas D. Stimson, the entire vessel being at the time subject to a mortgage of $8,666.66. An arrangement was made between the plaintiff and defendant by which the latter was to lend his credit to the plaintiff to enable him to purchase from Lonsby & Wolf this interest in the vessel. In

pursuance of this arrangement, a contract of sale was made by Lonsby & Wolf to defendant of the one-eighth interest, entitling him to one-eighth of the receipts, and making him responsible for one-eighth of the current expenses; and defendant gave to Lonsby & Wolf two notes,—one for $1,000, due in one year, and one for $1,250, due in two years,—each signed by plaintiff and indorsed by defendant; and defendant thereupon made a like contract to the plaintiff. In the years 1894 and 1895 plaintiff made payments upon the $1,000 note, and also upon the $1,250 note, and gave testimony tending to show that it was agreed between defendant and himself that defendant should retain the profits of the boat, and apply them to a reduction of the mortgage, and pay them to the holder of the mortgage. On the 17th of January, 1896, the plaintiff and defendant had a settlement of the amount paid the defendant to that date, except that the question of profits was not considered, it is claimed; and, as a result, plaintiff gave defendant a note for $132.65. The $1,250 note had not been paid, and was then renewed. About this time the holders of the mortgage upon the vessel were pressing for payment. Foreclosure proceedings were taken, the mortgage was foreclosed, and defendant became one of the purchasers. Four thousand dollars in cash was paid at the time, besides the expenses of sale, $540, and a new mortgage given for the balance.

Plaintiff claims that prior to the foreclosure proceeding, as well as subsequent thereto, it was understood and agreed between himself and defendant that defendant should become a purchaser of an interest in the boat on behalf of plaintiff, and that the arrangement previously existing between them as to the purchase by the plaintiff from defendant should continue; and that, after the foreclosure was made, the plaintiff in fact did make various payments to the defendant, until the entire amount covered by the contract had been paid for the one-eighth interest. Defendant disputes this, and claims that the plaintiff agreed, it is true, to continue the payments upon these

notes, and did pay them, but that plaintiff at the time abandoned all claim to the one-eighth interest; that the parties then understood and agreed that the debts of the steamer, including the mortgage, were in excess of its real value, and it was arranged that defendant should purchase the steamer, and place plaintiff in command of her at a salary of $1,000 per year, retaining $600 per year out of the salary, until the remaining note of $1,250, made by plaintiff, was paid; and that the arrangement was made for the sole purpose of enabling plaintiff to pay obligations he was legally bound to pay. . Upon the plaintiff's claim that the entire purchase price of this interest in the boat had been fully paid, he demanded of the defendant a bill of sale of the one-eighth interest. The defendant repudiated the alleged agreement, and refused to convey; and in this action the plaintiff, having treated the contract as rescinded, sues to recover for the money paid and interest, and the profits of the vessel.

There are numerous assignments of error, but the only ones meriting discussion are those which relate to the instructions of the circuit judge as to the measure of damages. The circuit judge charged the jury as follows:

"If you shall find that the sum of the profits received by the defendant, and the payments made directly to him by plaintiff, or by his sons for him, were sufficient to pay the purchase price, and interest thereon to the date of such payment, together with one-eighth of the mortgage existing at the time of making the contract, with the interest thereon to the date of payment, with all the necessary costs and expenses of that mortgage foreclosure and sale; and if you find that defendant, after this payment, refused to convey said one-eighth,—the plaintiff is entitled to recover the sum so paid to defendant directly, and one-eighth of the profits of the vessel, if you shall find there were any, less such sums as defendant has proven by way of set-off."

Error is assigned upon this instruction. If, as plaintiff claims, he had fully performed his contract, and defendant repudiated all obligations under it, this gave to plaintiff a choice of remedies. He might treat the contract

as in force and fixing the rights of the parties, and recover the actual value of the property when converted by the defendant; or he might treat the contract as at an end, and no longer defining the rights of the parties. If he elected to take the latter course, he was not entitled to what the contract gave him, but was entitled to be made whole; that is to say, he was entitled to recover the sums paid by him as having been paid without consideration. Nor would it be material whether the payments were made to defendant or to another, if they were induced by defendant's promises. See *Hosmer* v. *Wilson*, 7 Mich. 294 (74 Am. Dec. 716).

Plainly, the plaintiff would be made whole, in the present case, by the recovery of the amount paid by him, with interest. Were profits or earnings of the property also to be awarded to him, it would be permitting him to treat the contract as still measuring the rights of the parties for such purpose, while repudiating it for another purpose, and refusing to accept the compensation for the breach of the contract which the law fixes. This, we think, the plaintiff could not do. The case is unlike the case of *Hamilton* v. *Park & McKay Co.*, 112 Mich. 138 (70 N. W. 436), which was likened to the case of a landlord and tenant. It was a case where the licensee stipulated to pay a certain sum by way of royalties for every machine manufactured and sold. The plaintiff, the licensor, had fully performed, but the licensee was in default, giving the plaintiff the right to rescind. There was no other way, apparently, to measure the compensation which the plaintiff was entitled to for performance as far as he had gone, except to award him the royalties which had been earned under the contract. It was a divisible contract.

It must not be understood that the testimony as to the profits earned was inadmissible for any purpose. On the contrary, it was quite competent to show that plaintiff had performed his contract at the time defendant repudiated it, and that the payments made, plus the profits, equaled the full sum which the plaintiff undertook to pay.

The other objections urged are without merit.   For the error in instruction, the judgment will be reversed, and a new trial ordered.

HOOKER, C. J., MOORE and GRANT, JJ., concurred. LONG J., did not sit.